Beaver *v.* George W. Boyd Co. et al., Appellants.

Argued April 18, 1932.

Before Trex-

ler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*H. M. Reed* of *Reed and Ewing*, and with him *Thompson, Rose, Bechman and Dunn*, for appellants, cited: McColligan v. P. R. R., 214 Pa. 229; McCaully v. Imperial Woolen Co., 261 Pa. 312; Natalini v. Riefler & Sons, 286 Pa. 301.

*Lawrence M. Sebring*, for appellee, cited: Galey v. State Workmen's Insurance Fund, 286 Pa. 311; Johnston v. Payne-Yost Construction Co. et al., 292 Pa. 514; McCarthy v. Dunley-Franklin Company and Liberty Mutual Insurance Company, 277 Pa. 467.

Opinion by Cunningham, J., July 14, 1932:

On February 13, 1930, Thomas W. Beaver, a traveling salesman, suffered fatal injuries in a collision between an automobile, owned and driven by him, and a trolley car. His widow, Marie H. Beaver, claimed compensation from the George W. Boyd Company as his alleged employer. The defendant, a corporation engaged in the produce business and having its principal plant at Farrell, Mercer County, with a branch office in Rochester, Beaver County, contested her claim upon the ground that her husband was an independent commission broker and not its employe. The referee

awarded compensation and the board affirmed; the common pleas dismissed defendant's exceptions and entered judgment on the award from which defendant and its insurance carrier now appeal.

The only questions arising under the assignments are: (1) Whether Beaver was an employe of the defendant within the meaning of our Workmen's Compensation Act; and (2) If so, was he actually engaged in the furtherance of the business or affairs of his employer at the time of the accident?

Upon an examination of all the testimony we are satisfied the claim was properly disposed of by the compensation authorities and the court below. We adopt the following excerpts from the opinion of Chambers, J., specially presiding at the argument upon the exceptions, because the facts therein stated are supported by sufficient legally competent evidence and the conclusions of law follow from a proper application of the law to those facts.

"Was the deceased an employe as contemplated by the act? Also, if he were such an employe, was he injured in the course of his employment? The deceased was a salesman. Prior to entering into a contract with the George W. Boyd Company, he had been selling goods for two concerns, the New Comerstown Produce Company and the Tri State Butter Company. For the latter company he sold only butter. For the New Comerstown Produce Company he sold a number of products. The latter company had opened a branch store in Rochester, Beaver County, Pa., and the testimony would indicate that during this arrangement the activities of the deceased were largely expended in selling the products of the New Comerstown Produce Company and that the selling of the products of the Tri State Butter Company was rather incidental. About two years prior to the death of the decedent, the New Comerstown Produce Company discontinued their Rochester branch. At this time the deceased

called upon the George W. Boyd Company, defendant, at its home office in Farrell, Pa., explained the situation existing in Beaver County, and the result was that the George W. Boyd Company opened a branch store in the rooms lately occupied by the New Comerstown Produce Company and the deceased started to sell the goods of George W. Boyd Company to customers that he had called upon for the New Comerstown Produce Company. He received as compensation for these sales, a commission of two and a half per cent. upon all goods so sold. It was agreed between the George W. Boyd Company and the deceased that in addition to selling their products, he would continue to sell the products of the Tri State Butter Company as he had formerly been doing. In prosecuting his work he made regular trips. On Monday he went to Beaver Falls and New Brighton. On Tuesday he went to Midland, Rochester and possibly Monaca. On Wednesday he went to Aliquippa, Glen Willard and Coraopolis. On Thursday he went to Freedom, Conway and Ambridge. On Friday he called on any customers that he had not been able to see on the regular days, and on Saturday he had no regular places to go. The orders that he received he turned in to the Rochester branch and the orders were filled from there. It was also a part of his duty to collect for the goods sold, although his compensation was not dependent upon these collections. He was paid weekly a commission of two and a half per cent. on all the orders which he turned in. If disputes arose as to the payment of bills, these matters were referred to Roy Snyder, the manager of the Rochester branch of the defendant company, and were adjusted on such terms as Snyder suggested. Some of these adjustments at least were negotiated through the deceased. In the collection of bills, the deceased in some instances instituted suit before justices of the peace in the name of the defendant company and in one instance at least,

28

secured a transcript and filed the same in the court of common pleas of Beaver County, for the purpose of a lien. Roy Snyder, the Rochester branch manager, undertook to exercise some direction as to his work.

"In the testimony of Mr. Snyder, we have the following: 'Q. You did tell him you wanted him to see certain customers? A. Yes, sir. Q. And you thought you had authority to do that? A. That was in the contract that he would have to do that. Q. You told him not only once but many times to go and see certain customers? A. Yes, sir. ...... Q. And was it his duty to come to you at the office and get those statements and take them out and collect the money? A. Yes, sir—that was in his contract. ...... Q. Was it your duty to keep watch on your salesmen and customers' accounts—was that one of your duties? A. Certainly. Q. Is it not a fact that many times you thought a customer was a little shaky and you would speak to Tom and tell him to get after that account? A. Yes, sir. ...... Q. And you would give him directions relative to going down to a customer and seeing that that account was collected? A. Yes, sir. Q. At times you thought he was a little derelict in his duties in collecting the bills—you thought he was a little lax? A. Yes, sir. Q. And you would gouge him up again about the same thing? A. If necessary, yes. ...... Q. You did not give him any orders or try to give him any orders as to where and when he was to go? A. I tried, yes. ...... Q. State whether or not you exercised any control over Mr. Beaver's movements in covering his territory? A. I was supposed to have but I did not.'

"It is the contention of the defendant that the deceased was not an employe of the defendant, but that his work was of an independent character controlled by himself and that he acted in the capacity of a commission broker only. We cannot so hold. We think the evidence clearly indicates that the deceased oc-

cupied the position of an employe. 'Where, in a contract of employment, control is not reserved over the means, the relationship is that of independent contractor, and, conversely, where such control is reserved, the relationship is that of servant or employe': Kelley v. Del. Lacka. & W. R. R. Co., 270 Pa. 426. Speaking on this subject, on page 429 the court quotes from McColligan v. Penna. R. R. Co., 214 Pa. 229, the following: 'The relation of master and servant exists where the employer has the right to select the employe, the power to remove and discharge him, and to direct both what work shall be done, and the way and manner in which it shall be done.'

"The evidence would indicate that all these matters were present in the contract before us. There is nothing to indicate that the defendant could not have terminated the contract at any time.

"Snyder testified that he was supposed to exercise control over the decedent's movements in covering his territory, although he said he was not able to do so. It does appear that he directed him and exercised control over him in the matter of collections. That he required him to turn in his orders at certain times, and when they were not turned in, would call him on the 'phone to get them.

"Under all the evidence in the case, we think there was no error in the finding of the referee that the deceased was in the employ of the defendant. It is true that he had a number of customers with whom he was acquainted in his former work, but what salesman has not? This fact probably induced the defendant to locate his branch store in Rochester. But the evidence clearly discloses that the branch store was entirely under the control of the defendant. They were the defendant's goods that were brought there and distributed to the customers on the orders turned in by the deceased. It also appears by the testimony that the defendant maintained a salaried salesman in this

district, and while it does not positively appear in the evidence that the orders of this salaried salesman were filled from this branch store, the evidence would so indicate. The fact that the deceased was paid a commission instead of a salary would not be controlling: McCarthy v. Dunlevy-Franklin Co., 277 Pa. 467. Nor the fact that he sold some goods for the Tri State Butter Company. Just what amount of goods he sold for this concern, does not appear, but it does appear that the large end of his business was with the defendant company. He received in commissions from the defendant in one year, almost $1,700. The claimant says that his earnings amounted to about $200 per month. That about $50 of this would come from the Tri State Butter Company and the balance from the defendant company. There is some evidence in the case that the deceased may have had some outside ventures. That he could get some prospects for an automobile concern, and that on one occasion at least, the automobile company having made the sale, gave the deceased some money on this account. There is also some slight evidence that he may have continued to sell goods of the New Comerstown Produce Company, although this is very indefinite.

"The case of McCarthy v. Dunlevy-Franklin Company, above cited, is also authority for the finding of the referee that his work for these other concerns, whatever it may have been, did not change his status as an employe of the defendant company.

"This brings us to a consideration of the second question involved. Was the decedent at the time of his death actually engaged in the furtherance of the business or affairs of his employer? This was his regular day to go to Freedom, Conway and Ambridge. He had gone to Freedom, had called upon at least two customers there and received their orders for goods to be filled by the defendant company. He was killed in Conway when his automobile came into a collision

with a street car. It does not appear in the testimony where his next stop was to be. The claimant contends that the evidence shows that he was on his way to call on one, Louis Slavic in Conway, and the referee so found, but the compensation board reversed this finding on the appeal and holds, as a matter of fact, that the destination of the decedent was unknown and that it cannot be ascertained. This finding of the board is not appealed from, so the case stands that the decedent had called upon two of the defendant's customers in Freedom and that his next stop was unknown. However it does appear in the evidence, that in his regular business for the defendant, on this day he was accustomed to go to Freedom, Conway and Ambridge. He had been in Freedom on the business of his employer. He was killed in Conway. The defendant contends that in the absence of positive proof, that it is just as likely that the deceased was on his way to see a customer to whom he hoped to sell butter of the Tri State Butter Company, as that he was on his way to see a customer of the defendant's, and that there being no positive evidence as to his particular errand at this particular time, the board could not find as a fact that he was then engaged in the furtherance of the business of his employer and in that respect distinguished it from the case of McCarthy v. Dunlevy-Franklin Co., above cited. It is true that in that case the board found that McCarthy, after making a sale in a store in one town, was making his way to another town for the purpose of disposing of more of defendant's goods. The claimant, however, contends that the evidence in this case does show that up until the time of the accident, the deceased had been calling upon customers of the defendant. That there is no evidence that he had made any sales for the Tri State Butter Company or any other but the defendant during that day, and that the presumption of the law is, that, having shown him to have started out upon the business

of his employer, that the presumption would be that he continued in that business until evidence appears to show the contrary. This is a well established principle of law and we see no reason why it should not apply here. As we said before the chief business of the deceased was selling goods for the defendant. He had certain regular trips to make and on this day he was to cover Freedom, Conway and Ambridge. He had covered Freedom and made sales for his employer. He was in Conway where he ought to be on this day in the furtherance of his employer's business and, in the absence of proof to the contrary, we are satisfied that he would be presumed to be at the time of his death, engaged in the furtherance of his employer's business.

"Another matter that we failed to mention in our prior discussion relating to the employment of the deceased, was the fact that in his contract with the defendant, he was to use his own car in covering his territory, and for this use he was to receive the sum of $10 per week. The evidence discloses also however, that this $10 was to cover the expense of his luncheon in addition to his use of the car. This fact, we think, is persuasive of the character of his employment and that it is also a circumstance to be taken into consideration in determining his actual business at the time he was injured.

"A careful consideration of all the matters in the exceptions filed to the decision of the Workmen's Compensation Board in this case, leads us to the conclusion that there is no merit in any of the exceptions and that the appeal should be dismissed."

To the cases cited above may be added Lenhart v. Emmons and Company, 99 Pa. Superior Ct. 180, and Green v. Hiestand Bros. et al., 103 Pa. Superior Ct. 515.

Judgment affirmed.