Commonwealth, Appellant, *v.* Continental Rubber Works.

Argued April 12, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

C. F. *Chronister*, with him *Frank A. Sinon*, Deputy Attorney General, and *James H. Duff*, Attorney General, for appellant.

*John Y. Scott*, for appellee.

OPINION BY MR. JUSTICE PARKER, June 30, 1943:

Defendant appealed to the Court of Common Pleas of Dauphin County from a resettlement of its corporate income tax for the year 1935. The cause was tried by that court without a jury and judgment was entered against the Commonwealth for $474.61. The Commonwealth then appealed to this court. The entire business of the corporation was not transacted within the Commonwealth and the contest is as to the amount of its corporate net income tax for 1935 which is apportionable to Pennsylvania and is concerned exclusively with business done through an office in Buffalo, New York.

Under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208 (72 PS §3420a et seq.), the amount of the tax which is allocated to this Commonwealth is computed by a formula consisting of three fractions which give weight by percentages to (1) tangible property, (2) wages, salaries, commissions and other compensation paid to employees, and (3) gross receipts. The denominators are, respectively, all tangible property, all compensation paid to employees, and gross receipts. The numerators are, respectively, the amounts of these items assignable to Pennsylvania.[1] It is only the terms of the

---

[1] For further description of the formula see *Com. v. Bayuk Cigars*, 345 Pa. 348, 351, 28 A. 2d 134.

last two fractions with which we are concerned, that is, those having to do with compensation paid employees and gross receipts.

It was provided in part by §2 (72 PS §3420b), as originally enacted and in effect when this tax became due, as follows: "The amount assignable to this Commonwealth of expenditures of the corporation for wages, salaries, commissions, or other compensation to its employes, shall be such expenditures for the taxable year as represent the wages, salaries, commissions, or other compensation of employes, not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented [2] by the corporation outside the Commonwealth. The amount of the corporation's gross receipts from business assignable to this Commonwealth shall be the amount of its gross receipts for the taxable year from, (1) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented, (2) by the taxpayer outside the Commonwealth, and sales otherwise determined to be attributable to the business conducted on such premises."

The Commonwealth originally contended, and it has not abandoned the claim, that defendant did not *own or rent* the premises in Buffalo and therefore no part of the compensation paid employees or gross receipts arising through the Buffalo office was within the exception defining business done outside this state. The court below found as a fact that defendant conducted the branch at Buffalo under the management of one Sidney W. Prince, its agent, at an office rented by it. The Commonwealth then took the position and now argues that in any event Prince was an independent contractor. This would affect the terms of the last two fractions.

---

[2] By Act of May 5, 1939, P. L. 64, the word "maintained" was substituted for "owned or rented".

There is not any dispute as to the underlying facts, some of which favor Commonwealth's contention and others that of defendant. The parties do differ as to the inferences to be drawn from those facts. Defendant is a Pennsylvania corporation engaged in the manufacture of rubber goods at Erie, Pennsylvania. A so-called branch office was maintained in Buffalo in charge of Prince. This operation covered the greater part of the State of New York, excluding New York City and one western county. The defendant's sales manager determined the territory. Orders were solicited through the branch office by salesmen working out of that office. The orders were first sent to the Buffalo office where they were entered upon forms supplied by the home office and then were forwarded to the home office for acknowledgment, confirmation and credit approval. Most of the goods were shipped from the home office and billed from there. However, an inventory was maintained at the branch office. Goods shipped there were not consigned or billed to Prince but were shipped and invoiced to Continental Rubber Works at Buffalo. Title to the goods remained in defendant until sold to the trade. Orders from this stock were filled and billed from that office subject to approval of credit rating by the home office if not sold for cash. The premises occupied by the branch office were rented in the name of Prince. The office window bore the name "Continental Rubber Works". That name with that address was listed in the telephone directories and their classified sections. The salesmen held themselves out as representing the defendant and carried cards indicating that fact. The home office remitted monthly for all commissions due. The branch office paid all operating expenses including rent, commissions, social security taxes and workmen's compensation insurance from the money so received. The branch office was controlled by the home office as to contacting prospects, calling on the trade and dealing with customers. The manager, Prince, was compensated entirely on a commis-

sion basis and the rent and commissions due salesmen were paid out of the total sum remitted monthly to Prince. He retained the balance for his services.

We do not regard the fact that the company permitted Prince to make some sales for other companies which did not interfere with defendant's business as of any importance in determing the relation of Prince to the defendant company: Cf. *McCarthy v. Dunlevy-Franklin Co.,* 277 Pa. 467, 470, 121 A. 409; *Beaver v. G. W. Boyd Co.,* 106 Pa. Superior Ct. 24, 30, 161 A. 900.

As we have indicated, some of the facts stated are consistent with the Comomnwealth's claim and others with that of defendant, but the weight is with defendant. We agree with the court below that Prince was an agent of defendant and not an independent contractor. "Where control is not reserved over the means, the relationship is that of independent contractor, and conversely where such control is reserved, the relationship is that of servant or employee": *Kelley v. D., L. & W. R. R. Co.,* 270 Pa. 426, 429, 113 A. 419.

Defendant reserved the right to select the employee, the power to remove and discharge him and to direct what work should be done and the way and manner in which it should be done: See *McColligan v. P. R R.,* 214 Pa. 229, 63 A. 792. Prince testified: "I am their Buffalo Branch Manager. . . . They can tell me what to do and tell us who to call on, they have and do." He carried with him the company's card showing that he was "Manager, Continental Rubber Works, 885 Niagara Street, Buffalo, New York." The under salesmen carried the company's card without the word "manager". Defendant's officers testified to the same effect. "The question, however, is not whether it *did,* but whether it *could,* control": *Burns v. Elliott-Lewis Elec. Co.,* 118 Pa. Superior Ct. 243, 249-250, 179 A. 47.

Not only did defendant and Prince regard their relationship as that of master and servant, or, more precisely, principal and agent, but the circumstances are

consistent with that status. Defendant could exercise the same control over him that it could over any manager of a branch office and that it did over managers of other branches who were paid a salary. The term "employee" does not fully describe the relationship of a manager of a branch office although he is still an employee, for such a one is authorized to exercise independent judgment as agent for his principal. Prince was, as the court below found, an agent with broader powers than many other employees but nevertheless limited as to the means and manner of accomplishing the general orders of defendant.

Many of the facts are inconsistent with the status of an independent contractor. The company maintained its own stock of goods at the Buffalo office. Prince did not purchase these goods and resell them. He could not enter into a contract without the approval of defendant and when he obtained that approval he was paid his commission even though the credit risk proved to be a bad one. The contracts were made in the name of defendant on forms supplied by it. The relationship of contractor and contractee cannot be inferred from these facts.

The fact that Prince was paid on a commission basis and not by a fixed salary is not controlling: *Gailey v. State Workmen's Ins. Fund*, 286 Pa. 311, 316, 133 A. 498; *Burns v. Elliott-Lewis Elec. Co.*, supra.

Does the record support the finding of the court below that the Buffalo office was rented by defendant? The lease was taken in the name of Prince. It appears, however, that the Buffalo office had been operated in a small room and defendant directed Prince to secure larger quarters where a more extensive stock of goods could be maintained by defendant. This was done and on the window of this office defendant's name was placed. There its goods were stored. By listing this office as its office in the telephone directories it advertised the fact that the premises were its office. When the commissions were remitted from the home office, Prince was required to first pay from those sums the rent and the wages of

salesmen. We are in accord with the conclusion of the court below that Prince in renting the office did so as defendant's agent and on its behalf. When we consider the realities in determining the fundamental question, the correctness of the findings of the court below is apparent, and the conclusion is irresistible that defendant was actually carrying on business outside the state through premises rented by it.

It follows that the compensation paid and gross receipts from the Buffalo office are not assignable to Pennsylvania and should be included in the denominators but not in the numerators of the last two fractions.

Judgment affirmed at cost of appellant.