## Commonwealth v. The Minds Coal Mining Corporation

*James H. Duff*, Attorney General, for plaintiff.
*Hull, Leiby & Metzger*, for defendant.

RICHARDS, P. J., O. C., Dauphin County, specially presiding, December 23, 1946.—This is an appeal by defendant from the resettlement of its corporate net income tax for the calendar year 1941. The case was tried by the court without a jury pursuant to stipulation filed. Testimony was taken by the court and submitted on an agreed statement of facts. Appellant contends that the Commonwealth improperly assigned to Pennsylvania receipts from the sale of coal made by its agent outside of this State.

## Facts

Defendant is a corporation of the State of West Virginia duly authorized to engage in business in this State and actually so engaged during the tax year in question. It owns and operates a coal mine in West Virginia, maintains a mine office there, and has a mailing address at P. O. Box 1086, Elkins, West Virginia. It mines no coal in Pennsylvania. It does, however, maintain its only executive and administrative office at Ramey, Pa., and two of its officers are chiefly situated there. Defendant made a contract with the Bulah Coal Mining Corporation, hereinafter referred to as "Bulah", whereby the latter agreed to act as sales agent of defendant. Bulah maintained its own offices in New York, had its own salesmen and subagents, and procured sales totaling $1,585,847.27 during the year 1941. By the contract Bulah agreed to act as sales agent and authorized representative of defendant for the sale of bituminous coal, and to observe certain price limitations and Federal regulations. It agreed to make contracts with purchasers; to invoice all shipments of coal direct to the customer or other agents; to collect for sales; and to assume the credit risk. Orders for coal were forwarded by Bulah to the mines of defendant in West Virginia, where coal was allotted by the superintendent of defendant to fill the several orders. The coal was shipped from West Virginia, Bulah being the consignor. Defendant billed Bulah for the coal and paid it the stipulated commissions. Bulah alone collected from the purchaser and was responsible to the purchaser.

The resettlement excluded from both numerator and denominator of the wages and salary fraction the commissions paid to Bulah. This is because the commissions were not payable to employes. Appellant concedes this to be correct. However, the numerator of the gross receipts fraction contained the above figure of $1,585,847, representing sales made by Bulah. The

denominator included all gross receipts everywhere. The gross receipts fraction was thus determined to be $\frac{1,585,849}{1,655,302}$ Appellant questions the numerator only. The tax was resettled in the amount of $1,361.56. These are the most salient facts, but others will be found in our findings.

### Question involved

Did the Commonwealth properly include in the numerator of the gross receipts fraction the proceeds of the sale of coal procured by Bulah?

### Discussion

The tax here involved was settled pursuant to the provisions of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended and reënacted from time to time, including the Act of May 29, 1941, P. L. 62, 72 PS §3420(b). Section 2, subsection 2(c), of this act, provides, inter alia, that when all the business of a corporation is not conducted in Pennsylvania:

"(c) The remainder of such net income shall be divided into three equal parts . . .

"(3) Of the remaining third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the amount of the taxpayer's gross receipts from business assignable to this Commonwealth as hereinafter provided, and whose denominator is the amount of the taxpayer's gross receipts from all its business . . .

"The amount of the corporation's gross receipts from business assignable to this Commonwealth shall be the amount of its gross receipts for the taxable year from, (1) sales, fees, and commissions, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, premises for the transaction of business

maintained by the taxpayer outside of the Commonwealth, . . ."

It is admitted that appellant does not transact all its business in Pennsylvania. By virtue of the above provision, therefore, its gross receipts from sales of coal are assignable to Pennsylvania, unless defendant comes within the exception. The only sales excepted are those "negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, premises for the transaction of business *maintained by the taxpayer outside the Commonwealth.*" (Italics supplied.) The sales negotiated by Bulah were not obtained by agents working out of premises maintained by the defendant outside the Commonwealth. Under the statute they are, therefore, assignable to Pennsylvania. But, says defendant, Bulah was an independent contractor and its activities must be disregarded. We know of no case where it has been so held. The case of Commonwealth v. Continental Rubber Works, 347 Pa. 514, referred to by counsel, does not so hold. In fact, the opinion of the Supreme Court, in discussing the contention that sales were made by an independent contractor, stated "This would affect the terms of the last two fractions". We think the difference is this: If sales are negotiated or effected through an agency maintained by the taxpayer outside of this Commonwealth, they are not assignable to Pennsylvania; but if they are negotiated or effected by other means, as for example, by an independent contractor serving as a sales agent in another State, maintaining its own offices there, and having its own salesmen or subagents, they are assignable to Pennsylvania. Without prejudging any future case, we may say that we definitely so hold in this instance. We think that this conclusion is in no way in conflict without decisions in Com. v. Frick Co., 51 D. & C. 329, or in the Continental Rubber case, supra. In fact, in the Continental Rubber case, the Commonwealth was endeavoring to establish the existence of

an independent contractor in order to assign the sales to Pennsylvania.

In justice to defendant, however, we will say that its contention is not based upon the theory that defendant maintained premises in New York through Bulah. Rather, it assumes that all of Bulah's activities must be disregarded. Being disregarded, it argues, the sales were effected by defendant's superintendent at the mine in West Virginia when he caused the coal to be loaded on cars in fulfillment of orders. It may be true that title to the coal passed at that point and at that time. But this is certainly not the only meaning of the term "sale" as used in the act. The sale must be negotiated or effected. Clearly Bulah performed this function. It procured the orders and the contracts which resulted in the sale of coal. We think the words "negotiated or effected" relate to the activities which brought about or resulted in a sale. In fact, we think the Supreme Court has so held. In Commonwealth v. Quaker Oats Co., 350 Pa. 253, the court was considering the meaning of "negotiated or effected" and what sales should be attributed to Pennsylvania. Mr. Justice Allen M. Stearne, speaking for the Supreme Court, said (p. 259) :

"Appellant would have us construe this to mean that sales attributable to Pennsylvania must be only those which are both *negotiated and effected* within the State, using 'effected' in the sense of *consummated*, or *completed*. Such a construction would, of course, enable this appellant, or any foreign corporation, to eliminate the third allocative fraction from the tax formula by so arranging its sales machinery that all contracts would be 'accepted', and therefore consummated, at the home office. This is clearly contrary to the intention of the legislature, which was that the gross receipts fraction should reflect that portion of *corporate activity* conducted in this State resulting in gross receipts to the corporation in the form of sales,

rents and royalties. To assign to the word 'effected' the meaning urged upon us by appellant would controvert and frustrate the legislative purpose. 'Effected' has no technical meaning as a legal word of art. It is used in different senses, and often, loosely in contracts and statutes. Here, it is clear that it was intended to mean 'accomplished' or 'brought about': See Webster's New International Dictionary (unabridged). Given that meaning, it is consistent with the context and purpose of the section. The case of *Commonwealth v. Continental Rubber Works*, 347 Pa. 514, cited by appellant, supports this construction and opposes the construction for which appellant contends. There we held that sales negotiated by a branch sales office in New York, but *approved* and *accepted* in Pennsylvania, were assignable *outside* of Pennsylvania under Section 21(*b*) above quoted. While it is true that the legislature excepted sales negotiated *or* effected outside of Pennsylvania, it is clear that it would not have intended the inclusion in the fraction of only those sales which were *both* negotiated and technically completed in this State, or by salesmen operating from agencies in this State."

In our opinion, Bulah undoubtedly negotiated the sales in question. It also effected the sales. Its activities brought about or accomplished the sales here involved. The superintendent at the mine filled orders. He performed the final act of executing the sales. But he neither negotiated or effected the sales. If it should be argued that he did in fact so do, one would wonder why it was necessary to enlist the services of Bulah. Are the activities of the latter to be totally disregarded? We think not.

It is to be observed that neither the Commonwealth nor defendant contends that any sales of coal were made by appellant to Bulah. We agree with this conclusion. The contract between appellant and Bulah

contemplated only that sales should be made by the latter for the former for stipulated commissions.

We know of no provision of the law that sales must be negotiated or effected by an employe. Even though it be conceded that Bulah was an independent contractor, it does not follow that sales negotiated or effected by it cannot be assigned to Pennsylvania. Had Bulah maintained an office in Pennsylvania, from which the sales in question were negotiated, would they be eliminated from the gross receipts fraction merely because Bulah was an independent contractor? We suspect that they would not. In our opinion, the error of defendant's contention lies in the assumption that sales by an independent contractor acting as a sales agent must be disregarded and the sales attributed to the superintendent at the mines. We have discussed this above.

While it may not, strictly speaking, be relevant, we note that appellant has requested us to make a conclusion of law to the effect that of the total net income of $56,872 to be allocated, only $955.96 is attributable to Pennsylvania. Upon this basis, and applying the fractions in question, it would conclude that the total tax due is but $66.92. This is surely not placing a very high value upon the right to do business in this State.

The appeal and specification of objections raise certain constitutional questions. These were not mentioned in the argument or in the briefs. In view of this, we have deemed it unnecessary to discuss them in this opinion, particularly since the reported cases have already held that there is no merit in the several contentions. Also, the Commonwealth raises the question that the specifications of objections are inadequate to sustain the present contention of defendant. However, we have no doubt that paragraphs 9 and 10 are amply broad enough to cover defendant's position.

We note that defendant has paid tax in the amount of $1,393.93, and interest charges in the amount of $38.93 or a total of $1,432.86. This is $32.37 in excess of its tax and interest liability under the settlements in question. The provisions of the Fiscal Code of April 9, 1929, P. L. 343, sec. 1408, 72 PS §1408, relating to Attorney General's commissions, was repealed by the Act of May 15, 1945, P. L. 528, sec. 9. However, this repeal is effective only for the year 1944, and thereafter. Consequently, in this case the Attorney General is entitled to a commission.

We have acted upon the requests of both parties for findings of fact and conclusions of law. Those which we have affirmed we adopt as the findings and conclusions of the court. In addition, we make the following

### Conclusions of law

1. The Bulah Coal Mining Corporation, as a result of a contract, became the sales agent and authorized representative of defendant for the sale of its coal.

2. Bulah negotiated and effected sales of coal for defendant, for the tax year in question, in the amount of $1,585,847.

3. The sales negotiated and effected by Bulah were not by agents or agencies chiefly situate at, connected with, or sent out from, premises for the transaction of business maintained by the taxpayer outside the Commonwealth.

4. The sales here involved were not effected by defendant in West Virginia.

5. The sales procured by Bulah are attributable to Pennsylvania.

6. Tax was properly resettled in the amount of $1,361.56.

7. The amount of tax in dispute is $1,294.64.

8. No interest is due.

9. The amount owing by defendant for its corporate income tax liability, for the year 1941, is as follows:

| | |
|---|---:|
| Tax as resettled | $1,361.56 |
| Interest as settled | 38.93 |
| Attorney General's commission being 5% on the tax in dispute | 64.73 |
| | $1,465.22 |
| Credit for payments made | 1,432.86 |
| Balance due | $32.36 |

10. Judgment should be entered in favor of the Commonwealth and against defendant for the balance of $32.36.

### Decree nisi

And now, to wit, December 23, 1946, judgment is hereby entered in favor of the Commonwealth and against defendant for the balance of $32.36, unless exceptions hereto are filed within the time limited by law. The prothonotary is directed to notify the parties or their counsel of this decree forthwith.