Commonwealth *v.* Blumenthal Brothers
Chocolate Company, Appellant.

Argued May 22, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Ivan I. Light,* with him *William P. Thorn,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, July 1, 1974:

The appellant, Blumenthal Brothers Chocolate Company, is a Pennsylvania Corporation with headquarters in Philadelphia. During its fiscal years 1965 and 1966, the appellant had gross receipts each year of approximately $16,000,000 from its business of manufacturing and merchandising chocolate, cocoa, and candy products. Approximately $5,000,000 of appellant's total gross receipts of $16,000,000 each year was negotiated or effected, in the metropolitan New York area, by two sales agents of the appellant located outside of Pennsylvania. The orders received by the sales agents for the appellant's products were forwarded to the appellant's headquarters in Philadelphia for approval and the products ordered were shipped from Philadelphia to the out-of-state customers. The sales agents were paid strictly on a commission basis by the appellant. There was no other financial arrangement between the appellant and the sales agents. One of these sales agents, E. Berg & Sons (Berg), rented an office in Teaneck, New Jersey and the other agent, Charles R. Pariente (Pariente), rented an office in Hackensack, New Jersey.

In computing its Pennsylvania corporate net income tax liability for its fiscal years 1965 and 1966, the appellant excluded the gross receipts of approximately $5,000,000 received each year from its sales in the New York metropolitan area. The exclusion was not permitted, however, in the resettlements of appellant's tax liability. The resettlements were sustained by the Board of Finance and Revenue and the Commonwealth Court. *Blumenthal Brothers Chocolate Company v. Commonwealth,* 5 Commonwealth Ct. 344, 291 A.2d 347 (1972). This appeal followed.

The appellant had excluded the gross receipts of $5,000,000 from the numerator of the gross receipts fraction which is used, as provided by law, in the

computation of a corporation's net income tax liability. Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, §2, 72 P.S. §3420b(2)(c)(3) (repealed 1971 and replaced by Act of March 4, 1971, P. L. 74, No. 2, art. IV, §401, *as amended,* 72 P.S. §7401). Such exclusion, according to the appellant, was proper under a specific provision of the Corporate Net Income Tax Act. We do not agree.

The Corporate Net Income Tax Act provides that the numerator of the gross receipts fraction used in computing corporate net income tax liability shall be ". . . the amount of the taxpayer's gross receipts from business assignable to this Commonwealth . . ." The Act further provides that the gross receipts assignable to Pennsylvania "shall be . . . [the corporation's] gross receipts" minus any gross receipts which qualify under certain exceptions enumerated in the Act. The gross receipts of $5,000,000, according to the appellant, fall under the exception in the Act which provides ". . . except those [gross receipts] negotiated or effected on behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, *premises* for the transaction of business *maintained by the taxpayer* outside of [Pennsylvania]. . . ." Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, §2, 72 P.S. §3420b(2)(c)(3) (emphasis added).

The exception, of course, can only apply if all of the tests enumerated in the statute have been met by the appellant. There is no dispute that gross receipts of $5,000,000 each year were "negotiated or effected on behalf of the [appellant] by agents . . . [located] outside of Pennsylvania . . ." and there is no dispute that, in New Jersey, there were ". . . premises for the transaction of business . . ." by Berg and Pariente. These conclusions, however, are not sufficient to qualify the gross receipts of $5,000,000 for the exception in the Act. The exception in the Act also requires that the

premises for the transaction of business be ". . . maintained by the taxpayer. . . ."

The Commonwealth Court found that the premises in New Jersey were not maintained by the appellant. The leases for those premises were executed by Berg and Pariente in their own names *for their own business convenience.* There was no finding that the appellant paid or was legally responsible for paying any of the expenses involved in maintaining the New Jersey premises. Berg and Pariente, therefore, although agents of the appellant in their negotiating and effecting of sales, were not acting as agents of the appellant in renting the New Jersey premises. Under these circumstances, the Commonwealth Court properly concluded that the premises in New Jersey *were not maintained by the appellant.*

The appellant, however, argues that it *maintained* the New Jersey premises in the sense that the monies used for the payment of rent and other expenses by Berg and Pariente for the out-of-state premises were in reality monies which came out of the commissions received from the appellant. The statute, however, does not say *premises maintained by the sales agents* out of commissions earned. It says *"premises . . . maintained by the taxpayer. . . ."* If gross receipts qualified for the statutory exception under either situation, the words in the statute "premises . . . maintained by the taxpayer" would hardly be necessary. In all cases when out-of-state sales agents use out-of-state premises for the transaction of *their* business, the money for the maintenance of *their* premises is derived from monies received from *their* earnings—unless of course the sales agents' businesses are unprofitable.

In support of its position, the appellant relies on *Commonwealth v. Continental Rubber Works,* 347 Pa. 514, 32 A.2d 878 (1943), and *Commonwealth v. Hellertown Manufacturing Co.,* 438 Pa. 134, 264 A.2d 382

(1970). In *Continental Rubber*, however, the sales agent who also received commissions "was required to first pay from those sums the rent and wages of salesmen." 347 Pa. at 519-20, 32 A.2d at 880. *Continental Rubber* concluded that "in renting the office [the sales agent] did so as [the taxpayer's] agent and on its behalf." *Id.* at 520, 32 A.2d at 880. We later noted in *Hellertown* that these were important factors in *Continental Rubber*. In *Hellertown* we said: "In the *Continental Rubber* case, we were able to conclude that the taxpayer itself rented the outside premises because the nominal lessee was its actual agent and, therefore, his rent payments were the taxpayer's rent payments." 438 Pa. at 145, 264 A.2d at 388.

In this case, unlike *Continental Rubber*, there were no restrictions on the commissions earned by Berg and Pariente nor were there any other facts which would justify a conclusion that the sales agents were acting as the appellant's agents in renting the out-of-state premises. The finding made, which is supported by the record, is that the sales agents were acting *for their own business convenience*.

In *Hellertown*, the taxpayer was responsible for paying more than a commission on sales to the out-of-state sales agent. The payment from the taxpayer to its out-of-state sales agent "was clearly not a sales commission; rather, it was a conglomerate payment for many services" at the out-of-state location. 438 Pa. at 146, 264 A.2d at 388. The taxpayer was, "at least in part, responsible for the continued upkeep of [the out-of-state] premises." *Id.*

Neither *Continental Rubber* nor *Hellertown* control this case. The significant factors present in those cases are absent in the relationship between this appellant and the out-of-state premises. The appellant was in no way responsible for any expenses of the out-of-state

premises. Those premises were maintained by the agents for their own business convenience.

The appellant erroneously implies that this Court adopted a "check list of facts" in *Hellertown* which are to be considered in determining whether a taxpayer *maintains premises* out-of-state. We did not adopt such a check list in *Hellertown*. We called attention to a check list suggested by others, but we also said that we were "only slightly impressed" with portions of that check list. 438 Pa. at 144, 264 A.2d at 387. Appellant cites facts such as the appearance of the appellant's name on the windows of the out-of-state premises and the appearance of the appellant's name in telephone directories over the addresses of the out-of-state premises. In *Hellertown,* we said "[p]lacing a taxpayer's name in a telephone directory or on an office door or a building or printing stationery or cards showing an office address is the easiest type of self-serving action which a taxpayer may undertake and can be done even where it is totally unnecessary." *Id.* These and similar facts may exist even in cases, such as this, in which the out-of-state premises are not maintained by the taxpayer but by the agents for their own business convenience.

The order of the Commonwealth Court is affirmed.