145 N.J. Super. 352 (1976)
367 A.2d 1182
HOEGANAES CORPORATION, RESPONDENT,
v.
DIRECTOR OF THE DIVISION OF TAXATION OF THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1976.
Decided November 24, 1976.
*354 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Harry Haushalter, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Alfred C. Clapp argued the cause for respondent (Messrs. Clapp & Eisenberg, attorneys; Mr. Robert F. Nolan, of the New York bar, and Mr. Stuart L. Pachman, of counsel and on the brief).
The opinion of the court was delivered by HORN, J.A.D.
The Director of the Division of Taxation appeals from a judgment of the Division of Tax Appeals reversing the denial of a claim for refund filed by Hoeganaes Corporation with respect to its liability under the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq., for the years 1967 to 1970, inclusive.
That statute imposes a franchise tax upon every domestic and foreign corporation
* * * for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State * * *. [N.J.S.A. 54:10A-2]
The impost is a tax for the privilege of conducting the aforementioned activities in this State and is not a levy on the underlying assets or income. Werner Machine Co. v. Director of Div. of Taxation, 17 N.J. 121 (1954), aff'd 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956).
*355 The tax is computed by adding together prescribed percentages of a net-worth tax base, which constitutes essentially the stockholders' book equity, and a net-income tax base, which prima facie reflects taxable income reported to the Federal Government with certain exceptions not here pertinent. Multi-state taxpayers who maintain "a regular place of business" outside New Jersey other than a statutory office are entitled to apportion to New Jersey, pursuant to statutory allocation formulas, portions of their net-worth and net-income tax bases for purposes of computing their corporation business tax liability to the State. If the taxpayer does not maintain a regular place of business outside of this State other than a statutory office, it receives no credit on the tax. N.J.S.A. 54:10A-6.
The Director of the Division of Taxation, pursuant to his regulatory authority contained in N.J.S.A. 54:10A-27, promulgated the following regulation dealing with the allocation provisions, which defines the term "regular place of business" within the context of N.J.S.A. 54:10A-6:
A regular place of business is any bona fide office (other than a statutory office), factory, warehouse, or other space of the taxpayer which is regularly maintained, occupied and used by the taxpayer in carrying on its business and in which one or more regular employees are in attendance. [N.J.A.C. 18:7-7.2(a)]
Hoeganaes does not question the validity of this regulation and thus the sole question is whether that corporation maintained a regular place of business within the meaning of the foregoing regulation.
The judge of the Division of Tax Appeals held that Hoeganaes maintained regular places of business outside of New Jersey, pursuant to N.J.S.A. 54:10A-6 and N.J.A.C. 18:7-7.2(a), thus sustaining a claim for refund filed by that corporation with respect to its liability under the Corporation Business Tax Act for the years 1967 to 1970, inclusive. We reverse the Division and uphold the denial by the Director of a claim for refund by the taxpayer. Accordingly, we *356 hold that Hoeganaes did not qualify for an allocation under the statute or regulation because it did not maintain a regular place of business outside this State.
Hoeganaes is a manufacturer of powdered metals and maintains its principal office and factory in Riverton, New Jersey. Its market is nationwide. In 1970 sales were made in 40 states as well as in foreign countries. Total U.S. sales were approximately $12,000,000, of which $186,000 were in New Jersey. Sales of more than $500,000 were made in each of the States of Connecticut, Illinois, Michigan, Ohio and Pennsylvania. For many years the corporation has maintained sales engineers in Pennsylvania, Illinois, Connecticut, Ohio, New York and, more recently, Michigan. These engineers are strategically located to service customers' complaints, receive orders and assist in the solution of customers' manufacturing problems. The company also employs sales representatives to cover secondary marketing districts who are not on the company payroll. The necessity for the company's representatives in the primary marketing fields to be highly knowledgeable about the use and development of their own products is because powder metallurgy is a technique of somewhat recent origin and in many applications is still under development.
The sales engineers are technically trained and some are graduate engineers. They are full-time employees, are paid from the home office and are included in all employee benefit plans. There is no dispute that they are regular employees. The company requires that they have available space in their homes from which they can conduct their business. Each one of the engineers has an office equipped with at least one desk, a dictating machine, a file cabinet, a typewriter, and a technical library, in addition to the necessary office supplies. These are all supplied at company expense, if required.
The engineers' contacts with customers whom they service are established through their home locations. The telephone listings in some instances are under the name of the company. *357 Orders are received at the engineers' homes and forwarded to the home office. Sales engineers carry their business to the customers' places of business and consequently they are away from their own offices a large part of the time. It was estimated that they spent only 20% to 25% of their time in their "home" offices. No other regular employees are in attendance while the engineers are away, but the telephones are covered by answering services, recording devices or by some member of the engineers' families. The practices adopted by the respective engineers are not uniform in how they operate from their homes. Each engineer determines the practice in his own discretion.
The Director does not contend that an employee cannot establish an office in his home, nor that the particular sales engineers in question failed to establish offices in their homes. However, he argues that the mere establishment of an office in an employee's home for part-time use as done by the engineers does not satisfy the requirements of a "regular place of business."
The activities of the sales engineers are managed and controlled from corporate headquarters in Riverton. The engineers' reports of sales contacts are dictated, since the engineers do not have secretaries, and are submitted to the home office in Riverton for transcribing. The sales engineers are in constant communication with the Riverton headquarters for the purpose of seeking technical assistance regarding customers' inquiries. All written communications with customers are approved and relayed through the home office. Hoeganaes does not maintain any bank accounts at the locations where the sales engineers reside. Occasionally sales orders are sent through the sales engineers. However, the usual procedure is to approve and accept such orders at the Riverton home office, since sales engineers may not accept orders. Often customers place their orders directly with the home office.
All face-to-face contact with customers occurs at the customers' locations. The sales engineers deduct the cost of *358 utilizing their homes for business as a personal deduction for income-tax purposes. The company does not maintain inventories at these homes and it is customary for the personal telephone of each engineer to be his "business" phone  the company reimbursing each only for business-related telephone calls.
Hoeganaes does not enter into any written lease agreements with its sales engineers or with anyone else regarding the utilization of the respective homes as offices. It does not make any rental payments to its employees for the use of the space and no portion of the engineers' salaries is designated as being a payment in lieu of rent. For the years in question Hoeganaes did not pay state income or franchise taxes in any of the states in which its sales engineers reside; nor did it pay any state, county or local property taxes for property maintained at any one of the sales engineers' homes.
It has been the policy of the Division of Taxation in applying the regulatory definition of a "regular place of business" that an office must be owned or rented by the taxpayer in order to constitute a regular place of business. The taxpayer further must regularly occupy the premises by employing one or more regular employees who are in attendance during normal working hours.
The Division of Tax Appeals judge found that the sales engineers' offices were bona fide  and we agree. But he then stated, in part:
Respondent urges that either ownership or the payment of rent is a prerequisite to "maintaining" an office. Neither the statute nor the regulation so indicates. If it was to be, it could have been simply expressed. Respondent seems to be intent on a distinction between the sales engineer and the petitioner. I see none since one is the agent of the other. Surely occupancy and use by the employee in the course of the employer's business is occupancy and use by the employer.
We find this reasoning to be fallacious. It demonstrates a purely subjective test which does not appear to be *359 justified by anything stated in the statute or regulation. The rules of interpretation of the regulation are the same as the rules governing statutory interpretation. In re Plainfield-Union Water Co., 57 N.J. Super. 158, 177 (App. Div. 1959); In re Port Murray Dairy Co., 6 N.J. Super. 285, 300 (App. Div. 1950). Words of a regulation are to be given their ordinary and well understood meaning. Fahey v. Jersey City, 52 N.J. 103 (1968); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521 (1964).
In the ordinary and well understood meaning of the regulation the engineers' offices are not regularly maintained, occupied and used by the taxpayer. The concept espoused by the Division judge  that the use of space in the employees' homes is tantamount to its maintaining the offices  is not realistic in this factual context. Actually, the space in each abode is selected by each employee. Some live in apartments and their "offices" are spaces in their apartments. It may be any size; its decoration, location in the premises and overall use are at the whim and determination of the employee. The employee is responsible for repairs. There need not be a telephone in the room selected by an employee. Personal telephones are used and only business-related charges are paid for by his employer. There is no sign outside to inform persons of the presence of the office. It may be surmised that the "offices" may not even be legally permitted in the engineers' homes or apartment houses, by reason of zoning regulations. "Maintain" means to "bear the expense of" the subject, i.e., pay rent. See Webster's Third New International Dictionary (1971), at 1362. The Division judge apparently projected a concept of vicarious maintenance simply because the spaces in the engineers' abodes are used in connection with their employment. We cannot agree with this concept.
Hoeganaes supplies business equipment, such as a desk, filing cabinets and a typewriter, only if the employee has none of his own, with one exception  the dictating equipment, which the company requires to be uniform for the *360 convenience of its transcribers in Riverton. The fact is that the "offices" are maintained by the sales engineers for their own convenience, without any "office hours" except those when they actually feel like using them.
A regulation, like a statute, of necessity must be general. The drafters could not possibly anticipate every factual situation. Therefore, because they did not specify that the rent must be paid by the taxpayer or that the taxpayer must own the premises is not of any moment. The language sufficiently conveys to the reader a concept which covers the situation sufficiently  "regularly maintained" and "occupied and used by the taxpayer" and "regular employees in attendance" imply a place which to the ordinary person is more than a location where an employee writes up reports in his own home.
The argument advanced by the taxpayer that it does not require more than that which is supplied by its sales engineers is not an acceptable response. Hoeganaes is not prohibited by our law from operating any kind of office that it desires. However, the offices it claims to maintain are, in our judgment, neither their offices nor in any event "regular" places of business as comprehended by the regulation.
While the interpretation of the Director is not binding upon this court, that interpretation is entitled to some weight and is evidence of its conformity with the legislative intention. J.B. Williams v. Glaser, 114 N.J. Super. 156, 160 (App. Div. 1971).
In Commonwealth v. Blumenthal Bros. Choc. Co., 457 Pa. 61, 321 A.2d 369 (1974), the Pennsylvania Supreme Court faced a somewhat similar issue under the applicable Pennsylvania taxing statute which allowed for allocation of out-of-state sales by stating:
* * * except those [gross receipts] negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, premises for the transaction of business maintained by the taxpayer outside of [Pennsylvania] * * *. [321 A.2d at 370]
*361 The taxpayer retained two sales agents who maintained New Jersey offices and were paid exclusively on a commission basis. However, the corporate home offices were located in Philadelphia. In holding that the taxpayer under these circumstances could not allocate its tax basis under the applicable formula due to the fact that it did not maintain offices outside of Pennsylvania in the statutory sense, the court considered important the taxpayer's failure to own or rent premises outside the state or in any way to be financially responsible for any expenses of the out-of-state premises. The premises were found to be maintained by the agents for their own business convenience rather than for the corporation's, and accordingly the taxpayer's argument was rejected.
In Tonka Corp. v. Commr. of Taxation, 284 Minn. 185, 169 N.W.2d 589 (Sup. Ct. 1969), the court sustained the Tax Court's ruling that the taxpayer was carrying on a business partly within and partly without the state, and thus was entitled to apportion its income for the years in question under a similar Minnesota statute. The out-of-state salesman there made actual, final sales in foreign states, handled no similar products, performed customer services and operated out of branch offices provided by the manufacturer-taxpayer.
In Stradley & Krekstein, Corporate Taxation and Procedure in Pennsylvania (2 ed., 1952), at 230, it is stated:
The ascertainment of whether the taxpayer maintains an office outside the state to which gross receipts may be assigned depends entirely upon the circumstances. There are many factors that might constitute the maintenance of an office for the purpose of allocation. But what might be sufficient in one case would be inadequate in another; it is usually the combination of factors that add up to the necessary requirement. In other words the essentials may differ with the type of business, the type of agency or employment contract involved or the manner in which the taxpayer conducts its business. With this in mind, the following checklist might prove useful:
(1) Name of taxpayer in telephone directory, on building directory if there is one, on door leading to entrance of office or otherwise displayed on the office exterior.

*362 (2) Stationery and calling cards showing office address.
(3) Storage of inventories or display samples at location in question.
(4) A written or oral lease for the space involved and the direct or indirect payment of rent.
(5) A written or oral agreement for the maintenance of an office by the agent or agency on behalf of the taxpayer. [(Commonwealth v. Hellertown Manufacturing Co., 438 Pa. 134) 264 A.2d (382) at 387]
In sum, it is our belief that the language used by the Legislature in N.J.S.A. 54:10A-6 and that of the Director in N.J.A.C. 18:7-7.2(a) recognizes that not each and every place of business is a "regular" place of business. Viewed objectively, the spaces used by the respective sales engineers are not offices either maintained or occupied by Hoeganaes and are not "regular" places of business. In our judgment and under our interpretation of the law, the findings of the Division of Tax Appeals could not reasonably have been reached on the credible evidence presented in the record. State v. Johnson, 42 N.J. 146, 162 (1964). Accordingly, the judgment of the Division of Tax Appeals is
Reversed.
MATTHEWS, P.J.A.D. (dissenting).
I would affirm the judgment of the Division of Tax Appeals substantially for the reasons expressed by Judge Doherty in his formal opinion.
In dissenting, it appears to me that the issue before the Division and before us is the proper interpretation of the regulation in question (N.J.A.C. 18:7-7.2(a)) and not whether petitioner does or does not do business in foreign jurisdictions, or whether it does or does not pay taxes in such jurisdictions.
The undisputed facts disclose that the sales engineers who use their homes as offices are full-time employees who are required by the nature of their work to spend 80% of their working time at the place of business of customers, *363 and that they are responsible for servicing the needs of customers who generate all but $186,000 of approximately $12 million of sales in the United States; the former figure representing New Jersey sales.
Unquestionably, petitioner could satisfy the director by renting a room in an office building at each location and by hiring a telephone answerer to be present therein for an eight-hour day at minimal expense. That this is so satisfies me of the lack of merit in the director's argument.
I would affirm.