ANDREW, J.T.C.
This case involves the construction of N.J.S.A. 54:10A-6, which allows a taxpayer who “maintains a regular place of business” outside New Jersey to allocate its tax bases for the purpose of computing the tax owed under the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq., and also requires an interpretation of the corresponding regulation, N.J.A.C. 18:7-7.2(a), which defines “regular place of business.” The issue is whether plaintiff maintained a regular place of business outside this State.
The parties have stipulated the following facts. Plaintiff Shelter Development Corporation (Shelter) is a New Jersey corporation which was incorporated July 2, 1971. It filed a timely New Jersey corporation business tax return for the calendar year 1975 with the Division of Taxation and was assessed for the period January 1 to December 31, 1975 in the amount of $50,192.99 (plus interest). Of that total $16,704 (plus interest) is in dispute. This assessment was based on the *549 division’s rejection of plaintiff’s allocation of its out-of-state net income and net worth pursuant to N.J.S.A. 54:10A-6.
In 1975 plaintiff’s business consisted of the operation of commercial rental property in Bogota, New Jersey (the property). Four commercial tenants occupied a total of 272,000 square feet of space at the property. Operation of the property was taxpayer’s only business activity until June 15, 1975 when the property was sold and plaintiff thereafter became inactive. Taxpayer’s sole income for 1975 consisted of the rental income and the gain on the sale of the property.
Plaintiff contends that its only office was at 777 Third Avenue, New York, New York. This office was leased by Kenrich Corporation, the parent company of taxpayer’s affiliated group of companies, and was used as an office by the six major related corporations affiliated with Kenrich (including plaintiff). All of these related corporations except taxpayer had exactly the same officers. An interlocking directorate existed between plaintiff and the related corporations. For example, plaintiff’s president was the secretary of the other five corporations while plaintiff’s treasurer was the treasurer of all six corporations.
Taxpayer’s name did not appear anywhere at the property in New Jersey, but did appear in the building at the New York office. Although it did not have a separate listing in its own name in the New Jersey or New York telephone directories, all correspondence from plaintiff bore a New York telephone number at which third parties could reach someone acting on behalf of plaintiff. Taxpayer’s letterhead listed the New York office as its address.
Plaintiff’s books and records were at all times kept and maintained at the New York office and its bank accounts were in New York. The following services were performed at the New York office: collecting and depositing rent and other income; communicating with tenants regarding late payments, complaints, repairs, etc.; arranging for necessary repairs and maintenance; contracting for fuel; negotiating and implement *550 ing leases; disbursing funds; and bookkeeping and secretarial services.
Individuals in attendance at the New York office were full-time employees of the related corporations who performed duties for plaintiff as needed. Taxpayer reimbursed the related corporations for these services on an ad hoc basis since there were no formal contracts or agreements with the related corporations or their employees.
In 1974, the year prior to the tax year in question here, plaintiff was charged a management fee of $50,000 by Kenrich Corporation. In 1975 a total of $5,275 in compensation for management and personal services was paid by taxpayer. Of that total, a professional corporation, Roger Stern, P.C., was paid $4,375 for general management.[1] Lila Levine was paid $900 ($150 per month for six months) for secretarial services.
Plaintiff paid no rent, no New York taxes, no unemployment or state or federal withholding taxes in 1975. No individual federal corporation income tax return for 1975 was filed by taxpayer since it was included in a consolidated return for that year.
The final determination of defendant Director, Division of Taxation (Director), was made on December 30, 1980. Plaintiff’s timely complaint requesting a reduction in the corporation business tax assessment was filed on March 30, 1981. This case has been submitted by the parties for decision based on the stipulated facts noted above and their legal memoranda.
Plaintiff initially presented two issues for decision by the court, one of which defendant subsequently conceded. Consequently, the sole question remaining is whether taxpayer “maintain[ed] a regular place of business” in New York thereby permitting allocation in the computation of its New Jersey *551 corporation business tax under N.J.S.A. 54:10A-6 (hereinafter § 6) and N.J.A.C. 18:7-7.2(a) (hereinafter § 7.2(a)).[2]
I
Under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq., a corporate franchise tax is imposed on all domestic or foreign corporations for the privilege of doing business, using or owning capital or property, or keeping an office in New Jersey. N.J.S.A. 54:10A-2. The amount of tax depends on the corporation’s allocable net worth and allocable net income.[3] N.J.S.A. 54:10A-5. The allocation formula which is found in § 6 may only be used, however, if the taxpayer “maintains a regular place of business outside this State other than a statutory office.” N.J.S.A. 54:10A-6; see SMZ Corp. v. Taxation Div. Director, 193 N.J.Super. 305, 473 A.2d 982 (App.Div.1984) for a more detailed explanation of the operation of the allocation provisions. Should a taxpayer not meet this requirement, under § 6 the allocation factor then becomes 100%. Ibid. The Director adopted a regulation which defines “a regular place of business” within the context of § 6 as:
[A]ny bona fide office (other than a statutory office), factory, warehouse, or other space of the taxpayer which is regularly maintained, occupied and used by the taxpayer in carrying on its business and in which one or more regular employees are in attendance. [N.J.A.C. 18:7-7.2(a) ]
Plaintiff’s initial challenge is to the regulation. It contends that the Director’s definition of a regular place of business requires a greater level of activity than the statute itself *552 and is therefore invalid because it exceeds the legislative intent as expressed in the statute.
Plaintiff argues that the legislative purpose of § 6 was to make a provision for allocation when a taxpayer maintained a legitimate office outside of New Jersey. The Legislature’s specific exclusion of “a statutory office” from the language in § 6 requiring the taxpayer to maintain a regular place of business outside this State, plaintiff asserts, is evidence that it intended to require more than a superficial presence outside the State before allocation would be permitted. Plaintiff’s argument then proceeds in this way: the Legislature must have considered a statutory office to be a regular place of business, otherwise it would not have been necessary to specifically exclude statutory offices from the operation of § 6. Therefore, any out-of-state office which constitutes more than a statutory office is all that is required by the statute. As the Director’s regulation requires a higher degree of activity at the out-of-state office than the statute does to qualify for allocation, it is invalid as being beyond the Director’s statutory authority.
The argument has some superficial appeal. Reflection, however, reveals its spurious nature. It is evident that the Legislature intended that a taxpayer have something beyond a minimal presence outside this State before allocation would be permitted. However, there is nothing to indicate that the Legislature sought to define that “something more.” The mere exclusion of “a statutory office” in the language of the statute does not, by itself, demonstrate that the legislative design was to permit allocation in the event that a taxpayer’s out-of-state activity exceeded, by whatever minimal degree, the maintenance of a statutory office.
All that the language in § 6 indicates is that more than a statutory office is required. How much more is necessary is not shown. In other words, § 6 does not state what constitutes “a regular place of business,” it simply provides that a statutory office is not a regular place of business.
*553 The broad language employed in § 6 demonstrates that the Legislature did not wish to deal with the details of this provision, but instead left to the Director the task of establishing the definitional framework with which to implement allocation. Evidence of this intent may be found in N.J.S.A. 54:10A-27, which provides that the Director “shall prescribe and issue such rules and regulations, not inconsistent herewith, for the interpretation and application of the provision of [the] act, as he may deem necessary.”
In New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-563, 384 A.2d 795 (1978), the Supreme Court of New Jersey established the standards for judicial review of the validity of administrative regulations. These standards were summarized in Ski Haus, Inc. v. Taxation Div. Director, 5 N.J.Tax 26 (Tax Ct.1982) as follows:
(1) Administrative regulations are to be accorded a presumption of reasonableness, and the attacking party bears the burden of demonstrating that the regulations are arbitrary, capricious, unduly onerous or otherwise unreasonable. Id. [75 N.J.] at 561, 384 A.2d 795.
(2) Regulations must be within the fair contemplation of the enabling statute, but the court is not confined to a consideration of the statutory authority for a particular regulation, but may consider the entire enabling legislation. Id. at 561-562, 384 A.2d 795.
(3) The grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities, and the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent. Id. at 562, 384 A.2d 795.
(4) Courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. Id. at 562-563 [384 A.2d 795]. See, also, Sorensen v. Taxation Div. Director, 2 N.J.Tax 470, 474-475, 184 N.J.Super. 393, 446 A.2d 213 (Tax Ct.1981). [at 31]
Applying these standards, it does not appear that the Director exceeded his authority in promulgating § 7.2(a), which, in effect, defined the application of the broad statutory words “regular place of business” by limiting it to offices regularly maintained, occupied and used by a taxpayer with regular employees in attendance. As already noted, the legislation requires that a corporation have something greater than a *554 negligible presence at its non-New Jersey place of business before allocation is allowed. The Director’s regulation is entirely in keeping with this purpose. In any event, the regulation has not been shown to be unreasonable or plainly inconsistent with § 6. See Atlantic City Trans. Co. v. Taxation Div. Director, 12 N.J. 130, 95 A.2d 895 (1953); Ridolfi v. Taxation Div. Director, 1 N.J.Tax 198 (Tax Ct.1980). As plaintiff has failed to overcome the presumption of reasonableness accorded the Director's regulation, it must be considered a valid exercise of administrative authority in the context of this proceeding.
II
Plaintiff also argues that it meets the definitional standard set forth in the Director's regulation in that it has: (1) an out-of-state office “regularly maintained, occupied and used by the taxpayer,” and (2) “one or more regular employees” in attendance there.
In Hoeganaes Corp. v. Taxation Div. Director, 145 N.J.Super. 352, 367 A.2d 1182 (App.Div.1976) our Appellate Division had the opportunity to consider the requirements of § 7.2(a). The court was confronted with a taxpayer who contended that the homes of its sales engineers, who were full-time employees and were located in six states in which the taxpayer sold its products, constituted “regular place[s] of business.” The taxpayer required that each of the sales engineers have space available in their houses from which they could conduct their business. Each space had the usual office equipment and a technical library supplied at taxpayer’s expense. In some instances the home telephone number of the employee was listed under the name of the company. The taxpayer paid for business calls, but did not pay for the space used by its employees for office purposes. The court noted that taxpayer’s engineer-employees spent only 20% to 25% of their working time in their home offices and that there were no other regular employees in attendance while the engineers were away.
*555 The Director in that case argued that for an office to constitute a “regular place of business” within the regulatory definition it must be owned or rented by taxpayer and regularly occupied and attended by one or more regular employees during normal working hours. In denying allocation, the court focused on the word “maintain,” which it construed to mean “pay rent.” Hence it held that the taxpayer did not maintain offices outside this State in the statutory sense because it failed to own, rent or be in anyway financially responsible for, the expenses of the out-of-state offices.[4] Additionally, the court noted that the taxpayer did not have regular employees in attendance at the home offices during normal working hours and had virtually no control over the area, size, decoration and location of the space.
The element of a lack of control over the out-of-state space was also a concern expressed by Judge Conley in Rocappi, Inc. v. Taxation Div. Director, 182 N.J.Super. 163, 3 N.J.Tax 311, 440 A.2d 96 (Tax Ct.1981) when he stated:
[E]ven assuming that plaintiffs argument with regard to a regular place of business has some validity, the fact that plaintiff did not control the premises undermines its position substantially. For example, it is clear that all arrangements for the “offices” in California and Massachusetts were made by ... [taxpayer’s]parent company. Although [taxpayer] had some involvement in the operation of the offices ... most of its involvement was indirect. Thus, in no true sense of the word can [taxpayer] itself be said to have “regularly maintained” the California and Massachusetts offices, as required by the Director’s regulation. [Id. at 319, emphasis supplied]
In the present matter, the New York office utilized by plaintiff is leased in the name of Kenrich Corporation, taxpayer’s parent. Plaintiff stipulated that it paid no rent in 1975 for *556 the office space occupied.[5] In its brief, taxpayer contends that it paid maintenance costs to Kenrich, but this fact is absent from the stipulation. There is no evidence that the $50,000 management fee charged to taxpayer by its parent in 1974 included a reimbursement for rent or overhead costs, beyond taxpayer’s naked assertion to that effect.[6] Nor is there the slightest evidence that the management fee of $4,375 paid by the taxpayer in 1975 included a reimbursement for rent, other than an unsupported statement to that effect in plaintiff’s brief. Therefore, plaintiff has failed to show that it maintained an office in New York because it did not have a written or oral lease for, nor did it directly or indirectly pay rent on, the New York office.[7]
After consideration of all the evidence presented, it is also clear that plaintiff did not maintain sufficient control over the New York premises for this court to find that it regularly maintains an office there. The New York office cannot be considered to be “regularly maintained, occupied and used by the taxpayer in carrying on its business” as required by § 7.2(a).
The second aspect of maintaining a regular place of business is the existence under § 7.2(a) of “one or more regular employees in attendance.”
*557 The stipulation in this ease provided that the employees in attendance at the New York office were primarily full-time employees of related corporations. It is obvious from the nature and extent of the services rendered that they were not employees of taxpayer. A management fee was paid to a professional corporation in the amount of $4,375 for services rendered for the entire year of 1975.[8] The secretarial services rendered by Lila Levine, an employee of a related corporation, and the payment of $900 to her for such services did not render her a “regular employee” of plaintiff “in attendance” at the New York office. The phrase “regular employees in attendance” signifies more than the performance of services on an ad hoc basis as the need arose.[9]
In no true sense of the phrase can it be said that plaintiff “regularly maintained [or] occupied” the New York office or had “one or more regular employees ... in attendance” as required by the Director’s regulation.
There are two additional points which also require some mention. The first is plaintiff’s argument that since it did not need full-time employees or a more substantial office than it had, allocation should still be permitted. This argument was presented and rejected in Hoeganaes Corp. v. Taxation Div. Director, supra. 145 N.J.Super. at 360, 367 A.2d 1182. Plaintiff could have operated any kind of office that it wished; the fact that it needed no more than it had is of no moment. Fundamentally rather than measuring the statutory provisions against the taxpayer’s activities, it is the taxpayer’s activities which must fit the allocation statute.
The second point is premised on the fact that plaintiff did not maintain an office in New Jersey other than a statutory office. *558 Plaintiff asserts that denial of its claim for allocation is tantamount to a holding that plaintiff does not maintain an office anywhere, a supposedly absurd result. Again, as previously noted, plaintiff could have operated any kind of office that it felt was necessary or none at all for that matter. All that the law requires is that plaintiff maintain a statutory office in this State. N.J.S.A. 14A:4-1. If plaintiff chooses to operate with less than what is required for allocation, the result is neither prohibited nor absurd.[10]
For the above reasons defendant’s determination is affirmed. The Clerk of the Tax Court is directed to enter judgment dismissing plaintiff’s complaint.

Roger Stern as an individual was the secretary of the five affiliated corporations not including plaintiff and was president of plaintiff. The stipulation of facts states that the payment for management services was to a professional corporation and not to Roger Stern individually.

Defendant briefed the question whether the statute and the regulation are violative of the Due Process Clause and the Commerce Clause of the United States Constitution. It is unnecessary for this court to address these issues, however, since these were not raised in the complaint, at the pretrial conference, or in the pretrial order, and were expressly disclaimed as issues by plaintiff.

The general purpose of allocating or apportioning net income and net worth is to prevent the taxation of the same net income or net worth by more than one state when a taxpayer carries on business in several states. General Motors Corporation v. District of Columbia, 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68 (1965).

Plaintiff has cited Commonwealth v. Hellertown Manufacturing Co., 438 Pa. 134, 264 A.2d 382 (Sup.Ct.1970) in support of its position that it maintained a regular place of business in New York. Hellertown is inapposite here for the reason that the decision turned on the court’s interpretation of the word "maintained” in the Pennsylvania statute. Moreover, after the decision in Commonwealth v. Blumenthal Bros. Choc. Co., 457 Pa. 61, 321 A.2d 369 (1974) it is not at all clear that Hellertown correctly expresses the view of the Pennsylvania Supreme Court on the subject of allocation based on the maintenance of out-of-state offices.

Plaintiff also stipulated that it paid no New York taxes in 1975, i.e.t neither New York State franchise, nor New York State or City property, taxes.

This payment is of little persuasive value, in any case, since it was made one year before the tax year at issue.

Plaintiff has argued that its name on the building directory in New York and its use of stationery showing a New York office address and telephone number are very significant features. I do not agree and refer plaintiff to the language of the Pennsylvania Supreme Court in Commonwealth v. Blumenthal, supra, as to the importance of these factors:
In Hellertown, we said ‘[p]lacing a taxpayer’s name in a telephone directory or on an office door or a building or printing stationery or cards showing an office address is the easiest type of self-serving action which a taxpayer may undertake and can be done even where it is totally unnecessary.' [457 Pa. at 66, 321 A.2d at 372]

The stipulation did not indicate who performed the management services but simply stated that payment was made to Roger Stern, P.C. There is also no indication that the payment was made to Roger Stern personally, either as an employee or as an officer of plaintiff corporation.

Additional support for this conclusion can be found in the fact that plaintiff paid no unemployment taxes or state or federal withholding taxes in 1975.

Plaintiff asserted that a holding by this court denying allocation would be inconsistent with SMZ Corp. v. Taxation Div. Director, supra. On the contrary, such a holding would be completely consistent with SMZ. The facts and the holding in SMZ demonstrated that SMZ Corp., a real estate holding company, did not maintain a regular place of business within the meaning of § 6 in either New Jersey, its state of incorporation, or Connecticut, the state in which its leased property was located.