SMALL, P.J.T.C.
Under N.J.S.A. 54:10A-6, a New Jersey corporation which maintains a regular place of business outside of New Jersey may allocate a portion of its income away from New Jersey in computing income taxable under the New Jersey Corporation Business Tax Act (“CBT”), N.J.S.A 54:10A-1 to -40. The plaintiffs in these cases, River Systems, Inc. (“River Systems”), Rubachem, Inc. (“Rubachem”), and Rubachem International, Ltd. (“International”), contend that they maintain regular places of business in New City, New York and thus, only allocable portions of their total income should be taxed in New Jersey. The defendant, New Jersey Director of the Division of Taxation (the “Director”), contends that the “regular place of business” in New City, New York is maintained by a related, but separate, corporation, not the plaintiffs in these cases, and, therefore, plaintiffs are not entitled to allocate income away from New Jersey.
The parties have stipulated the following facts. The three plaintiffs, River Systems, Rubachem, and International, are New Jersey corporations that share a regular place of business in Englewood, New Jersey. All administrative activities relating to the three companies, such as accounting, payroll, accounts receivable, and shipping, are conducted at their place of business in Englewood, New Jersey. River Systems and Rubachem are in the business of marketing and selling computer-related products and light bulbs. The shareholders of River Systems are Leon *602 Rubach (80%) and Marc Rubach (20%). Rubachem is owned solely by Leon Rubach. International is in the business of marketing and selling industrial and commercial cleaning products and light bulbs. The shareholders of International are Leon Rubach (60%), Joseph Rubach (20%), and Marc Rubach (20%).
A related, but separate, company, General Litesearch, Inc. (“General Litesearch”), which has owners in common with River Systems, Rubachem, and International, is in the business of selling light bulbs wholesale to River Systems, Rubachem, and International. General Litesearch also provides administrative services to River Systems, Rubachem, and International. Employees paid by and carried on the payroll of General Litesearch engage in telemarketing activities at an office in New City, New York. The employees solicit sales of computer products and light bulbs for River Systems and Rubachem, and industrial cleaning products and light bulbs for International. Each telemarketing employee solicits sales of products of one of the three companies.
The office building in New City, New York, is owned by another related company, Lemar Investment Company (“Lemar”). River Systems, Rubachem, and International each pay a fixed sum to Lemar as rent that is adjusted at the end of each year on the basis of the relative overall sales of the various companies for whom sales of products are solicited. Each company is charged for telephone usage according to the specific calls made on behalf of the company. Other expenses of the building, including utilities, are paid by one of the companies and allocated among all of the companies at the end of the year based on relative sales.[1] The expenses are allocated among River Systems, Rubachem, and International in relation to the sales volume of each company’s products that are solicited through the telemarketing activities taking place at the New City, New York location. There is no written lease with Lemar calling for the allocation of costs among the three plaintiffs on the basis of their annual sales, nor is there a written lease calling for the payment of rent.
General Litesearch is responsible for paying wages of the telemarketing employees. The company for whom a telemarket *603 ing employee solicits a sale reimburses General Litesearch for the payroll expenses of that employee. The cost of management or supervisory personnel is charged to the individual companies based upon relative sales. Similar to the relationship between Lemar and the three plaintiffs, there is no contract nor are there accounting records between the three plaintiffs and General Lites-earch substantiating or clarifying with precision the methods of allocation.
When a General Litesearch employee in the New City, New York building solicits a sale, the employee enters the information about the customer and the items to be sold on a computer. The relevant company whose products are the subject of the sale receives the information at its office in Englewood, New Jersey, arranges for shipping the items, and receives payment for the items directly from the customer. The revenues from the sale of products made by the General Litesearch employees at the New City, New York office are the income or accounts receivable of the company whose products are the subject of the sale, and the company whose products are the subject of the sale takes any loss if payment is not made by the customer.
The products of River Systems, Rubachem, and International are primarily drop-shipped by unrelated, third-party manufacturers. See Stryker v. Director, Div. of Taxation, 18 N.J.Tax 270, 273 (Tax 1999) and Steelcase, Inc. v. Director, Div. of Taxation, 13 N.J.Tax 182, 193 (Tax 1993) (describing drop shipments as transactions in which (a) the seller has delivery made to the buyer by a third party and (b) the seller never takes possession of the goods). However, some products are shipped from the Englewood, New Jersey locations of River Systems, Rubachem, and International. No products are shipped from the New City, New York location since that office only performs telemarketing services.
General Litesearch’s supervisory personnel at the New City, New York location train, oversee, and discipline all the employees at that location. There are no supervisory employees who train, oversee, and discipline only employees handling sales for River Systems, Rubachem, or International but, rather, the supervisors *604 are given “general assignment” to all the companies. River Systems, Rubachem, and International perform telemarketing services at the Englewood, New Jersey place of business. The New Jersey employees are also carried on the payroll of General Litesearch.
The Englewood, New Jersey office is owned by Leon Rubach. River Systems, Rubachem, International, and General Litesearch each pay a fixed sum to Leon Rubach as rent. This sum is adjusted at the end of each year on the basis of the relative overall sales of the various products solicited at that location. All other expenses of operation at the Englewood, New Jersey office, such as accounting services and the like, are divided among the four companies based on relative sales solicited from that location.
River Systems, Rubachem, International, and General Lites-earch are separate companies, not divisions of one company. They do not file a consolidated tax return in New Jersey because New Jersey does not provide for the filing of consolidated tax returns of related companies under the CBT. Cf. I.R.C. § 1501. As a historical matter, new companies were formed to market and sell new product lines. Each company is a subchapter S corporation (see N.J.S.A. 54:10A-4(p)), but has elected to be treated as a C corporation for New Jersey Corporation Business Tax purposes. N.J.S.A. 54:10A-5.22 (explaining that a corporation must specifically elect to be treated as a New Jersey S corporation).
River Systems filed CBT returns for the years 1995 and 1996 seeking a refund of $4,424. In the amended returns, River Systems allocated its income between New Jersey and New York. Rubachem filed amended CBT returns for the years 1994, 1995 and 1996 seeking a refund of $97,763. In the amended returns, Rubachem allocated its income between New Jersey and New York. International filed amended New Jersey CBT returns for the years 1995 and 1996 seeking a refund of $38,977.36. In the amended returns, International allocated income between New Jersey and New York.
River Systems, Rubachem, and International filed Franchise Tax returns and sales tax returns in New York for all the years at *605 issue in this case. Each company filed amended New York returns allocating income between New York and New Jersey. New York accepted the allocation and granted the refund requests.
The Division of Taxation denied River Systems’ and Ruba-chem’s requests for refunds on July 9, 1998, and May 28, 1998, respectively. The Division initially granted International’s refund request and issued checks in the amounts of $6,724 for the year 1995 and $20,808 for the year 1996. Thereafter, the Division denied International’s refund request by letter dated December 9, 1998, and asserted a tax balance due in the amount of $7,913.63 plus interest for the year 1995, and $25,851.94 plus interest for the year 1996. River Systems, Rubachem, and International filed timely protests of the refund denials.
The Division issued a Final Determination to River Systems on August 20, 1999, granting relief by permitting an adjustment under N.J.S.A. 54:10A-8 in the form of a two-factor allocation based on property and receipts. The adjustment resulted in an increase in tax due for 1995 and an overpayment for 1996, resulting in a net refund of $56.00. The Division issued a Final Determination to International on August 18, 1999, denying relief on the ground that International did not maintain a regular place of business outside of New Jersey. However, the Division gave International a credit for taxes paid to Washington, D.C. After adding back the previously granted refunds and applying the credit, the Division assessed total tax for 1995 in the amount of $6,724.05 plus interest, and total tax for 1996 in the amount of $22,325.67 plus interest. The Division issued a Final Determination to Rubachem on August 18, 1999, denying relief on the ground that it does not maintain a regular place of business outside New Jersey. River Systems, Rubachem, and International each filed complaints in the Tax Court challenging each respective Final Determination.
The sole question for determination in these cases is whether River Systems, Rubachem, and International “maintained a regular place of business” in New City, New York thereby permitting *606 allocation of income to New York in the computation of them CBT under N.J.S.A. 54:10A-6 and the applicable regulations. To answer that question, I must determine whether, for CBT purposes, the employees of General Liteseareh are (1) in effect employees of the plaintiffs or (2) employees of an independent corporation which provides telemarketing sendees to the plaintiffs.
For the reasons discussed below, I have determined that the employees of General Liteseareh are not the employees of plaintiffs and that, therefore, the plaintiffs do not maintain a regular place of business outside of New Jersey and, accordingly, are not entitled to allocate income to New York in the computation of them CBT.
The Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40, imposes a franchise tax on domestic corporations. N.J.S.A. 54:10A-2. The tax is based upon the corporation’s entire net income. N.J.S.A. 54:10A-5.
When a corporation maintains a “regular place of business” outside New Jersey, the portion of the corporation’s net income allocable to New Jersey for CBT purposes is determined by multiplying its entire net income by an allocation factor. The allocation factor is an average of three fractions, derived by dividing the corporation’s property, sales, and payroll in New Jersey by its property, sales, and payroll in all states in which it does business. N.J.S.A. 54:10A-6.
When a taxpayer does not maintain a regular place of business outside New Jersey, the allocation factor is 100% of the corporation’s net income. N.J.S.A. 54:10A-6; N.J.A.C. 18:7-7.1(a) and (b). The Director may, however, apply “any other similar or different method calculated to effect a fair and proper allocation of the entire net income ... reasonably attributable to the State,” when the allocation factor “does not properly reflect the activity, business, receipts, capital, ... entire net income of a taxpayer reasonably attributable to the State----” N.J.S.A. 54:10A-8; see also N.J.A.C. 18:7-8.3(a) and N.J.A.C. 18:7-10.1.
A “regular place of business” is a “bona fide office (other than a statutory office) ... of the taxpayer which is regularly maintained, *607 occupied and used by the taxpayer in carrying on its business and in which one or more regular employees are in attendance.” N.J.A.C. 18:7—7.2(a). “The taxpayer must be directly responsible for the expenses incurred in maintaining the regular place of business and must either own or rent the facility in its own name and not through a related person or entity.” N.J.A.C. 18:7-7.2(a)(2).
Furthermore, “[t]he taxpayer must regularly maintain, occupy and use the premises by employing one or more regular employees who are in attendance during normal working hours.” N.J.A.C. 18:7-7.2(a)(3). “A regular employee must be under the control and direction of the taxpayer in transacting the taxpayer’s business and/or performing work on behalf of the taxpayer.” N.J.A.C. 18:7-7.2(a)(4). If the taxpayer’s business is conducted by an independent agent, “the place of business of the independent agent ... shall not be considered a regular place of business of the taxpayer.” N.J.A.C. 18:7-7.2(a)(4v).
There have been a number of cases construing the language of N.J.S.A. 54:10A-6 and the Director’s regulatory definition of a “regular place of business.” New Jersey courts have held that an out-of-state employee’s home did not constitute a “regular place of business,” Hoeganaes Corp. v. Director, Div. of Taxation, 145 N.J.Super. 352, 367 A.2d 1182 (App.Div.1976); that a salesman’s use of an out-of-state office maintained by its parent corporation did not constitute a “regular place of business,” Rocappi, Inc. v. Director, Div. of Taxation, 182 N.J.Super. 163, 3 N.J.Tax 311, 440 A.2d 96 (Tax 1981); that an out-of-state office leased by the taxpayer’s parent company and used by the taxpayer did not constitute a “regular place of businessShelter Development Corp. v. Director, Div. of Taxation, 6 N.J.Tax 547 (Tax 1984); and that an out-of-state gasoline filing station owned by a New Jersey real estate company did not constitute a “regular place of business,” SMZ Corp. v. Director, Div. of Taxation, 5 N.J.Tax 232 (Tax 1982), rev’d and rein’d on other grounds, 193 N.J.Super. 305, 473 A.2d 982 (App.Div.1984). The court, in each case, held that the requisite objective standards for a regular place of business *608 were not met, and, thus, the appealing taxpayers were not permitted to use the three-factor allocation formula of N.J.S.A. 54:10A-6.
The Director argues that the three plaintiffs in these cases do not maintain a regular place of business outside New Jersey within the meaning of N.J.S.A. 54:10A-6. Although the plaintiffs contend that they maintain a regular place of business in New City, New York, the facts demonstrate otherwise.
Plaintiffs have no “regular employees” at the New City, New York office. As noted above, the regulation specifies that “[t]he taxpayer must regularly maintain, occupy and use the premises by employing one or more regular employees who are in attendance during normal working hours.” N.J.A.C. 18:7—7.2(a)(3). “A regular employee must be under the control and direction of the taxpayer in transacting the taxpayer’s business and/or performing work on behalf of the taxpayer.” N.J.A.C. 18:7-7.2(a)(4). All employees at the New City, New York office are the employees of General Litesearch, a separate and independent, although related, corporation, incorporated in New York.
While plaintiffs contend that each of them pays “rent” (each plaintiff pays a fixed sum to Lemar for use of its building but, because there is no written lease, it is not certain if the payment is on behalf of plaintiffs or on behalf of General Litesearch) and each plaintiff reimburses General Litesearch for the actual cost of each employee assigned to make sales on its behalf, those two payments do not change the fact that the telemarketers are employees of General Litesearch, a separate company, not a division or subsidiary of any of plaintiffs. Moreover, there is no written contract regarding the reimbursement for employees nor a lease that provides for the payment of rent. For purposes of this case, the ruling in Shelter Development Corp., supra, 6 N.J.Tax 547, is on point. A corporation cannot make itself eligible for allocation if it does not maintain a regular place of business outside of New Jersey. The fact that a related corporation maintains a regular place of business outside of New Jersey and performs services for the New Jersey corporation will not result in the activities of the *609 related corporation being attributed to the New Jersey corporation.
In General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 416 A.2d 37 (1980), our Supreme Court set forth the legal principle that “a business decision will be given its tax effect according to what actually occurred,” and that a taxpayer corporation makes certain business decisions that have certain tax consequences and is then bound by those decisions. Id. at 138, 416 A.2d 37. The Court held that “a voluntary business decision ‘is to be given its tax effect in accord with what actually occurred and not in accord to what might have occurred.’ ” Id. at 136, 416 A.2d 37, quoting Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974). Plaintiffs certainly eould have rented office space in New City, New York in their own names and could have directly employed telemarketers to solicit sales of their goods. However, they chose to pay a separate, although related, corporation to conduct these activities. I need not inquire as to why a business decision was made, but I cannot ignore or disregard the manner in which plaintiffs chose to organize and run their business.
 Plaintiffs also argue that, if I find that the taxpayers do not maintain a “regular place of business” outside New Jersey, the taxpayers are nevertheless entitled to the application of the three-factor allocation formula of N.J.S.A. 54:10A-6 through the provisions of N.J.S.A. 54:10A-8. The Director has discretion to adjust the CBT allocation factors to properly reflect the taxpayer’s entire net income attributable to New Jersey pursuant N.J.S.A. 54:10A-8, even where the taxpayer does not maintain a regular place of business outside New Jersey. See SMZ, supra, 193 N.J.Super. at 317-818, 473 A.2d 982. In fact, the Director has exercised that authority to provide some relief in these cases, although he has not provided relief in the form of the requested three factor allocation. See this slip opinion at 6 and 7.
The leading case on the applicability of N.J.S.A. 54:10A-8 is Hens Realty Corp. v. Director, Div. of Taxation, 10 N.J.Tax 63 (Tax 1988). In that case, Hess Realty sought review of a determi *610 nation by the Director revising its business allocation factors. Judge Andrew held that: (1) a taxpayer which paid no rent or expenses related to operation of office space outside of New Jersey did not maintain a regular place of business outside of this state within the meaning of Corporation Business Tax Act; (2) absent explanation as to why the three-factor formula was deficient, the three-factor formula was appropriate for determining CBT allocation; and (8) the appropriate business allocation factor was the three-factor formula, rather than the regulatory tax credit procedure established by the Director. In Hess Realty, this court allowed Hess Realty Corporation an adjustment under N.J.S.A. 54:10A-8 by finding that the three-factor formula was appropriate for a corporation which held and managed real estate and had no employees.
Hess Realty Corporation conducted business in other states. It owned substantial amounts of commercial real estate outside of New Jersey. Hess Realty did not center its activities in New Jersey, like the plaintiffs in this case. It was a crucial finding in Hess Realty that the taxpayer actually had business activities in more than one jurisdiction. Id. at 85. In this case, plaintiffs neither own property in another state, nor do they have any of their own employees soliciting sales in any other state. They contract with General Litesearch, a separate corporation, for all of them New York activities. The fact that General Litesearch is “reimbursed” for its expenses as opposed to its being paid in some other fashion, does not negate the fact that General Litesearch is a separate corporation that employs all of the out-of-state telemarketers. Therefore, plaintiffs’ reliance on Hess Realty is misplaced.
As noted above, the Director may apply “any other similar or different method calculated to effect a fairand proper allocation of the entire net income ... reasonably attributable to the State” when the allocation factor “does not properly reflect the activity, business, receipts, capital ... or entire net income of a taxpayer reasonably attributable to the State....” N.J.S.A. 54:10A-8. See also N.J.A.C. 18:7-8.8(a) and N.J.A.C. 18:7-10.1.
*611 As defendant notes, “here, ..., the 100% allocation factor properly reflects the activity, business, receipts, and capital, of the plaintiffs reasonably attributable to the State. Plaintiffs have no employees and own no property anywhere.” Therefore, plaintiffs are not entitled to allocate income under N.J.S.A. 54:10A-8.
The arrangement between the three plaintiffs and General Litesearch is comparable to an employee leasing arrangement. Under an employee leasing arrangement, a company contracts with an employee leasing company (also referred to as a “Professional Employer Organization”) in which the employee leasing company assumes, via a contract, the employment responsibilities and liabilities of the contracting company. The employee leasing company assumes responsibility for obligations related to human resources, workers’ compensation, labor law compliance, payroll, and employment taxes. However, the client-company retains responsibility for the day-to-day management of the workers. Furthermore, the contracting company maintains all “hire and fire” authority, handles promotions, and provides workplace supervision as required. Finally, the employee leasing company is recognized by the Internal Revenue Service as the “employer of record” for liability for federal income and unemployment taxes and is responsible for these payments.[1] However, even under the employee leasing arrangement, a corporation would not be able to allocate net income under either N.J.S.A. 54:10A-6 or N.J.S.A. 54:10A-8 unless the taxpayer had a regular employee on site supervising the leased employees. “The taxpayer must regularly maintain, occupy and use the premises by employing one or more regular employees who are in attendance during normal working hours.” N.J.A.C. 18:7-7.2(a)(3). “A regular employee must be under the control and direction of the taxpayer in transacting the taxpayer’s business and/or performing work on behalf of the taxpayer.” N.J.A.C. 18:7-7.2(a)(4). If the taxpayer’s business is conducted by an independent agent, “the place of business of the independent agent ... shall not be considered a regular place of *612 business of the taxpayer.” N.J.A.C. 18:7-7.2(a)(4)(v). If plaintiffs would have owned the building in New City, New York and had its employees who supervised General Litesearch’s employees carried on plaintiffs’ books, then the plaintiffs might have been able to allocate a portion of its net income to New York. Plaintiffs chose a particular way of conducting business, and the tax consequences will flow from that business decision.[2]
I conclude that plaintiffs do not maintain a regular place of business in another state. Furthermore, I conclude that, since the plaintiffs have no distinct business activity in New City, New York, they are not entitled to allocate income out of New Jersey under N.J.S.A. 54:10A-8. The Director’s motions for summary judgment are granted. Plaintiffs’ cross-motions for summary judgment are denied.

 StaffMarket, Questions and Answers about PEOs, (visited on November 5, 2001) <www staffmarket com>.

 I note that under P.L. 86-272 taxpayers selling tangible personal property (like the plaintiffs in this case) are not subject to income tax in any slate in which they merely solicit sales. See Wisconsin Dept, of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 112 S.Ct. 2447, 120 L Ed.2d 174 (1992).